In the District Court of the United States
For The District of South Carolina

**BEAUFORT DIVISION**

| | | |
|---|---|---|
| Napolean Richard Cooper, #277490 | ) | Civil Action No.  9:06-3407-CMC-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Corporal:  Atkins | ) | |
| Sergent:  Church | ) | |
| Warden:  Larry Powers | ) | |
| Doctor:  Bianco | ) | |
| Nurse:  Collins | ) | |
| | ) | |
| Defendants. | ) | |

## I.   INTRODUCTION

The Plaintiff, Napolean Richard Cooper ("Plaintiff" or "Cooper"), an inmate in the South

Carolina Department of Corrections ("SCDC"), was temporarily housed in the Spartanburg

County Detention Facility ("SCDF") during the time of the events giving rise to this action.  The

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983[1] based upon allegations of deliberate

indifference to his serious medical needs.  He has filed this action against the Defendants

Corporal Atkins ("Cpl. Atkins"); Sergent [sic] Church ("Sgt. Church"); Larry Powers, Warden

---

[1]     42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,
subjects, or causes to be subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,
or other proper proceeding for redress, except that in any action brought against a judicial
officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not
be granted unless a declaratory decree was violated or declaratory relief was unavailable.

("Powers");[2] Doctor Bianco ("Dr. Bianco"); and Nurse Collins ("Nurse Collins"). Each
Defendant is sued both individually and in their official capacities.[3]

This case was automatically referred to the undersigned United States Magistrate Judge
for all pretrial proceedings pursuant to the provisions of Title 28, United States Code Section
636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C.

## II.    *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction.
*Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976);
*Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978);
*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970
(1978). Under established local procedure in this judicial district, a careful review has been
made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism
and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.
This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504
U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S.
519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en
banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.
*Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se*
complaint nonetheless may be subject to summary dismissal. The mandated liberal construction
afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a
valid claim on which the plaintiff could prevail, it should do so, but a district court may not

---

[2]     Powers is identified in the caption as the Warden of the SCDF, but Powers' Affidavit [22-3]
states that he is the Director of the SCDF. To avoid confusion regarding his title, he will be
referred to herein only by his surname.

[3]     *See* Complaint [1] at p. 5.

rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. BACKGROUND TO THE CASE

Cooper, who presently is incarcerated at the Tyger River Correctional Institution, had been transferred from that facility to the SCDF on October 13, 2006, to await final disposition on a detainer. According to the Affidavit of SCDF Director Larry Powers ("Powers"), the SCDF staff was informed that Cooper had a violent disciplinary history, and therefore he was required to be in full restraints and escorted when out of his cell. (Powers Aff. [22-3] at ¶ 4 *and* Exhibit A (SCDC Inmate Record Summary and SCDF Administrative Segregation records) attached thereto). Cooper was housed in a room on the top tier of Pod 5, a maximum security unit at the SCDF. (Complaint [1] at p. 3).

At approximately 9 p.m. on October 13, 2006, Cpl. Atkins placed Cooper in full body restraints (leg chains and a belly chain attached to his handcuffs), and escorted him out of his cell for one hour of recreation. (Powers Aff. [22-3] at ¶ 5 *and* Exhibit B (SCDF Incident Report) attached thereto). Cooper states that after he successfully walked down the first flight of stairs unassisted by Cpl. Atkins, his foot became entangled with his leg chain, and he fell down the second set of stairs onto the floor, causing injury to his neck, right shoulder, right wrist, right hip, and upper back. Cpl. Atkins called medical, and a nurse came to assist Cooper, who told them he was in pain. (Complaint [1] at p. 3; Powers Aff. [22-3] at ¶ 5 *and* Exhibit B (SCDF

Incident Report) attached thereto). Cooper complained of an inability to move his right arm, and neck and shoulder pain and was evaluated by a SCDF nurse. (Dr. Bianco Aff. [25-3] at ¶ 5; Nurse Collins Aff. [22-4] at ¶ 5 *and* Exhibit A (SCDF record regarding fall) attached thereto; Powers Aff. [22-3] at ¶ 4 and Exhibit B (SCDF Incident Report) attached thereto). A nurse bandaged a "small abrasion" on Cooper's right wrist. (Nurse Collins Aff. [22-4] at ¶ 5 and Exhibit A (SCDF record regarding fall) attached thereto). Cooper was assisted to a wheelchair, and placed in a holding cell for approximately two hours. Cooper stated he was in pain, asked for medical attention, and stated that he had undergone surgery in his neck. (Complaint [1] at p. 4). Cooper then was transported in a "cramped van" to Spartanburg Regional Medical Center for x-rays of his right shoulder and neck. (Complaint [1] at p. 4; Atkins Aff. at ¶ 5; Nurse Collins Aff. [22-4] at ¶ 3 *and* Exhibit A (SCDF record regarding fall) attached thereto; Powers Aff. [22-3] at ¶ 4 *and* Exhibit B (SCDF Incident Report) attached thereto). X-rays were taken of Cooper's right shoulder (three views), but no acute fractures or dislocations were seen, and no significant joint space abnormality was seen. X-rays also were taken of his cervical spine (four views); although these x-rays revealed a previous surgical fusion between the skull base and C-2, no new acute fractures were identified as a result of the incident. (Nurse Collins Aff. [22-4] at ¶ 5 *and* Exhibit C (Spartanburg Regional Medical Center records) attached thereto; Powers Aff. [22-3] at ¶ 6; Dr. Bianco Aff. [25-3] at ¶ 7).

Cooper contends he asked for medical attention while at the hospital and was told by Sgt. Church that Dr. Bianco had been called and would see him as soon as Cooper was returned to the SCDF. Cooper was returned to the SCDF with no new written orders for treatment. (Nurse Collins Aff. [22-4] at ¶ 4). Upon Cooper's return to the SCDF, Cooper told Sgt. Church he was in pain and asked to see the doctor. Sgt. Church told him the doctor would not be in that evening and Cooper would have to wait until the next day. (Complaint [1] at pp. 4-4A). Sgt. Church gave Cooper a C collar to support his neck (Dr. Bianco Aff. [25-3] at ¶ 6; *see also* Nurse Collins Aff. [22-4] at ¶ 4 and Exhibit B (SCDF record) attached thereto) but Cooper contends he did not

receive any medical care or medication for pain. (Complaint [1] at p. 4A). Also on October 14, 2006, Cooper asked for medical attention and filled out a medical request form, but received no reply. *Id.*

According to the Defendants, on October 15, 2006, Cooper began to complain of pain in connection with this incident, and filled out a "Request Slip for Medical Attention" at 8 a.m. that morning. (Exhibit D (Request Slip for Medical Attention) attached to Nurse Collins Aff. [22-4]). Also on October 15, 2006, Cooper filed a grievance addressed to Powers, stating that he needed medical care but that his requests were being ignored. Cooper filled out another request, asking for medical care because he was experiencing numbness in his arms and legs. (Complaint [1] at p. 4A).

In response to Cooper's "Request Slip for Medical Attention," he was prescribed Motrin 200 mg, two tablets, three times a day, for five days. (*See* Exhibit D (Medication Sheet; Request Slip for Medical Attention; *and* Medication Administration Record "(MAR")) attached to Nurse Collins Aff. [22-4]). The MAR indicates that Cooper was to have 200 mg Motrin at 8 a.m. and 2 p.m. on October 16, 2006 but, according to a notation on the MAR, Cooper was in court at that time and therefore did not receive Motrin at those times. According to the MAR, Cooper first received Motrin at 8 p.m. on October 16, 2006. (*See* MAR attached as Exhibit D to Nurse Collins Aff. [22-4]). He completed the prescription on October 20, 2006. (Dr. Bianco Aff. [25-3] at ¶ 8; Nurse Collins Aff. [22-4] at ¶ 6 and Exhibit D (MAR) attached thereto).

On October 16, 2006, Plaintiff went on a hunger strike and wrote another (his fourth) request to medical stating that his hunger strike would continue unless he received some type of medical attention or something for his pain. That morning, Cooper was taken to court for his detainer appearance. That evening, an officer brought Cooper two white tablets from the nurse for pain (Complaint [1] at p. 5) and Cooper ended his hunger strike that same evening. Cooper contends he continued to fill out medical requests but received no reply. (Complaint [1] at p. 4A).

On October 20th, Cooper's medication was discontinued, and he received nothing more for pain. (Complaint [1] at pp. 4A-4B; *see also* Exhibit D (Medication Sheet; Request Slip for Medical Attention; *and* MAR) attached to Nurse Collins Aff. [22-4]).

October 24, 2006, Cooper was returned to the Tyger River Correctional Institution. (Complaint [1] at p. 4B; Powers Aff. [22-3] at ¶ 8). Cooper told Lieutenant Bates at Tyger River that he had been denied medical care while at SCDF and that he needed medical attention. Lieutenant Bates told Cooper to fill out a request form. Subsequently, on October 26, 2006, Cooper was seen by Nurse Moore and prescribed a muscle relaxant, Chloroxazone, 500 mg and Ibuprofen 500 mg. Cooper was scheduled to see Dr. Bearden on November 1, and told him he felt pain and numbness as a result of his injuries. Dr. Bearden confiscated the Plaintiff's neck brace, and prescribed 800 mg ibuprofen. As of November 13, 2006, the date of his complaint, Cooper continued to have problems with his upper back and neck. (Complaint [1] at p. 4B).

## IV.  PROCEDURAL HISTORY IN FEDERAL COURT

On December 1, 2006,[4] the Plaintiff commenced this action against the Defendants, claiming that they were deliberately indifferent to his serious medical needs, and specifically that he was denied adequate medical care and treatment for his pain after he fell down the stairs while housed at the SCDF. The Plaintiff seeks a total of $200,000.00 in compensatory and punitive damages from the Defendants. (Complaint [1] at p. 5).

After the case was brought in to proper form, the court issued a serve order. [6] On February 20, 2007, counsel, representing all of the Defendants, timely filed an answer to the complaint, and affirmatively pled that the Plaintiff had failed to exhaust appropriate administrative remedies prior to filing suit. [8] On March 2, 2007, Dr. Bianco, by separate

---

[4]     Although the Plaintiff's complaint was dated November 13, 2006, the envelope indicates that it was received in the SCDC mailroom on December 1, 2006. The Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), should a limitations issue arise in this action. *See* Order dated December 28, 2006. [5]

counsel, filed an answer which affirmatively pled that the Plaintiff had failed to exhaust appropriate administrative remedies prior to filing suit.  [9]

On April 23, 2007, the Defendants filed a motion to enlarge the time in which to file their dispositive motions.  [16]  The motion was granted by the undersigned by an Order filed on April 24, 2007.  [20]  On May 21, 2007, counsel for the defendants Cpl. Atkins, Sgt. Church, Powers, and Nurse Collins (collectively, the "SCDF Defendants"), filed a motion for summary judgment and a supporting memorandum with an affidavit by Powers, an affidavit by Nurse Collins and other exhibits.  [22-1--22-5]  Accordingly, an Order was issued on May 23, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the motion for summary judgment within thirty-four (34) days.  [24]

On May 23, 2007, a "Motion for Dismissal and for Summary Judgment" was filed on behalf of Dr. Bianco, accompanied by a supporting memorandum, an affidavit by Dr. Bianco, and other exhibits.  [25-1--25-3]  A second *Roseboro* order was issued to the Plaintiff, again informing him of the summary dismissal procedure and the possible consequences if he failed to adequately respond.  [26]

After the Plaintiff failed to respond to either of the *Roseboro* orders, the undersigned issued an order on June 23, 2007, directing the Plaintiff to respond within twenty (20) days of the date of the order.  [28]  On July 24, 2007, the Plaintiff filed an affidavit in response to the motions for summary judgment filed by the SCDF Defendants and by Dr. Bianco.  [31]

On August 9, 2007, after reviewing the memoranda in support of the motions for summary judgment and finding that the issue of exhaustion had not been addressed, the undersigned issued interrogatories to the Defendants in order to ascertain whether the Plaintiff had exhausted his administrative remedies with respect to the events alleged prior to filing this

action.  [33]  On August 15, 2007, the SCDF Defendants filed a response which admitted that the

Plaintiff had, in fact, exhausted his administrative remedies prior to filing this action.[5]  [35]

Pending before the court are the SCDF Defendants' motion for summary judgment and

Dr. Bianco's motion for summary judgment.  [22; 25]  As the issues have been joined, this case

is ripe for review by the undersigned.

## V.  SUMMARY JUDGMENT STANDARD

The determination of each motion for summary judgment pending before this court is

governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after
> adequate time for discovery and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an element essential to that party's case,
> and on which that party will bear the burden of proof at trial.  In such a situation there can
> be no "genuine issue as to any material fact," since a complete failure of proof concerning
> an essential element of the nonmoving party's case necessarily renders all other facts
> immaterial.  Id. at 323; Fed. R. Civ. P. 56(c).

Summary judgment is proper if, viewed in the light most favorable to the non-moving

party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits . . . show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Ross v.*

*Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be

drawn from the forecast evidence.  *Ross*, 759 F.3d at 364.  Put another way, all justifiable

inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852

---

[5]    The Prison Litigation Reform Act of 1996 (the "PLRA"), codified as amended at 42 U.S.C. §
1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison
conditions under section 1983 of this title, or any other federal law, by a prisoner confined in
any jail, prison, or other correctional facility until such administrative remedies as are
available are exhausted."  42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516,
524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by
§ 1997e(a) is now mandatory.");  *see also Booth v. Churner*, 532 U.S. 731, 741 (2001).
"[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought
in court."  *Jones v. Bock*, 127 S.Ct. 910, 2007 WL 135890 at *8 (Jan. 22, 2007) (*citing Porter*,
435 U.S. at 524).

(4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987).  Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of Md. Medical Sys. Corp.*,  855 F. 2d 167 (4th Cir. 1988).

Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to Plaintiff.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").  Accordingly, this Court must enquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## VI.  DISCUSSION

### A.  Introduction

As a *pro se* litigant, the Plaintiff's Complaint must be construed liberally by this court. Nevertheless, a careful review of all of the pleadings in this case has led this court to recommend, for the reasons set forth below, that the Defendants be granted summary judgment.

### B.  Plaintiff's Action Pursuant to Section 1983

Plaintiff has brought this action alleging he was denied adequate medical care and pain medication after he fell down the stairs, resulting in muscle strain and numbness, in violation of his civil rights pursuant to 42 U.S.C. § 1983.  The United States Supreme Court has held:  "To

state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).

In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted). Mere negligence or malpractice does not violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Therefore, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851. Furthermore, the type and amount of medical care an inmate receives is discretionary. *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga. 1994). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988). It follows, then, that disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Finally, in the context of alleged indifference to serious medical

needs, in order to state a Section 1983 claim, the plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

## 1.  Deliberate Indifference--Medical Personnel

Whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry.  First, the plaintiff must allege a deprivation of medical care that was sufficiently serious (the objective component) and second, allege that there existed a "sufficiently culpable state of mind" by the defendant (the subjective component). *See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  The first issue (the objective element) is whether the plaintiff has pled the deprivation of a serious medical need.  That element can be further broken down into two components:  (1) a serious medical need and (2) mistreatment or nontreatment of that need.

There is no clear definition of what constitutes a serious medical need.  However, the Eighth Amendment embraces the treatment of medical conditions which may cause future health problems.  *Smith v. Preston*, 2007 WL 626191 at *3 (D.S.C. Feb. 23, 2007) (*citing Helling v. McKinney*, 509 U.S. 25, 35 (1993)).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).  The objective element also requires the plaintiff to prove that his serious medical need was not timely or properly treated.  *Smith v. Preston*, 2007 WL 626191 at *3.  Although expert exploration may be required to aid the jury in determining the threshold standard of medical care, a jury may find, without further expert testimony, that certain actions fell so far below enunciated standard that they constituted gross indifference

actionable under Section 1983. *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990). Thus, summary judgment may not properly be based on an absence of a statement from an expert that the care given was grossly negligent when inferences drawn from the record could support such a finding. *Id*.

The second element (the subjective component) requires a showing that the defendant's actions were wanton. The standard for wantonness depends upon the circumstance of the case. *Smith v. Preston*, 2007 WL 626191 at *3 (*citing Wilson*, 501 U.S. at 302-03). To be deliberately indifferent, a defendant must know of and disregard an objectively serious condition, medical need, or risk of harm. *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to him or which would be apparent to a reasonable person in his position. *See, id.* at 852-53 (deliberate indifference to cardiac condition); *Mitchell v. Aluisi*, 872 F.2d 577, 580 (4th Cir. 1989) (denial of requests for medication); *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987) (obvious risk created by gunshot wound); *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir.1986) (condition escalated into obvious risk); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir.1978) (delay in treating an obviously broken arm). Whether a prison official had the requisite knowledge is a question of fact subject to demonstration by inference from circumstantial evidence, and a fact finder may conclude that prison official knew of substantial risk from the very fact that a risk was obvious. *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). A plaintiff must prove that the defendant was aware of facts showing a substantial risk of harm and also drew the inference that a substantial risk of harm existed. *See, Johnson v. Quinones*, 145 F.3d 164, 167-68 (4th Cir. 1998) (although doctors knew of symptoms, there was no evidence that doctors knew of the medical condition underlying the symptoms).

**Claims against the medical personnel (Dr. Bianco and Nurse Collins)**

On the merits of the claims against Dr. Bianco and Nurse Collins, assuming *arguendo* that the Plaintiff's injuries from the fall (pain, muscle strain and numbness) are considered serious or life threatening conditions, there is no evidence that either of these defendants was deliberately and intentionally indifferent to the Plaintiff's medical needs. First, the Plaintiff has failed to show that he was denied medical treatment by Dr. Bianco or by Nurse Collins. The Plaintiff states that he requested pain medication on October 15; the SCDF Records indicate that Motrin was prescribed, and that he began receiving it on October 16.[6] Dr. Bianco has stated by Affidavit that each time he was made aware that the Plaintiff had a medical complaint, Dr. Bianco evaluated the problem and prescribed appropriate treatment. (Dr. Bianco Aff. [25-3] at ¶ 9). Furthermore, the medical care provided to the Plaintiff was appropriate and within the generally recognized and accepted standards of care required of a physician. (Dr. Bianco Aff. [25-3] at ¶ 10). Nurse Collins, too, has stated by Affidavit that as Nursing Supervisor at the SCDF, she is responsible for overseeing the medical care of the inmates. Cooper was prescribed Motrin, 200 mg., two tablets, three times a day, for five days. At all times when participating in Cooper's care, she acted within her discretion, in good faith, and with proper motives. (Nurse Collins Aff. [24-3] at ¶¶ 6-7).

The Plaintiff acknowledges in his Complaint that he was prescribed medication for pain. The gravamen of Plaintiff's complaint appears to be that the treatment was insufficient. Although the Plaintiff may be dissatisfied with the medical care he received, his dissatisfaction is insufficient to state a claim under Section 1983. The Plaintiff has shown nothing more than a disagreement with the medical treatment provided, **not** that he was denied medical treatment. At most, the Plaintiff's complaint sounds in medical negligence, which is not actionable under 42 U.S.C. § 1983. *Miltier*, 896 F.2d at 851 (for plaintiff to succeed on medical indifference claim,

---

[6]     As stated above, the Plaintiff would have begun to receive Motrin on the morning of October 16, but for the fact that he had been taken to court that morning.

the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness . . . mere negligence or malpractice does not violate the Eighth Amendment."). Accordingly, even assuming that the Plaintiff's injuries from the fall (pain, muscle strain and numbness) are considered serious or life threatening conditions, the Plaintiff has failed to state a Section 1983 claim for medical indifference against Dr. Bianco or against Nurse Collins.

## 2. Deliberate Indifference–Non-medical Personnel

The Fourth Circuit has held that to bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison doctors' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990).

## Claims against the Non-medical Personnel
### (Cpl. Atkins, Sgt. Church, and Powers)

With respect to the Plaintiff's claims of medical indifference against the defendants Cpl. Atkins, Sgt. Church, and Powers, it is recommended that these defendants be granted summary judgment. As for Cpl. Atkins, the record reveals that after Cooper fell down the stairs, onto the right side of his body, he sat up and was assisted to standing by Cpl. Atkins. Cooper complained that his right arm was hurt. Cpl. Atkins notified the medical department of the SCDF, and a nurse was sent to the pod to evaluate Cooper. There is no evidence to suggest that he was indicates that Cpl. Atkins denied medical treatment to the Plaintiff, or deliberately interfered with medical treatment, or was indifferent to the Plaintiff's medical needs.

Next, with respect to Sgt. Church, who accompanied Cooper to the hospital, Cooper alleges that Sgt. Church initially told the Plaintiff he thought the Plaintiff was faking until he saw the X-rays, which apparently showed evidence of the prior spine surgery. (Complaint [1] at p. 4). Sgt. Church's doubt, or skepticism, does not translate into a denial of treatment, or interference with, or indifference to the Plaintiff's medical needs. Furthermore, taking the

allegations in the Plaintiff's complaint as true, the fact that Sgt. Church told the Plaintiff that Dr. Bianco would see him immediately upon his return to the SCDF (which apparently did not occur) does not demonstrate that Sgt. Church denied, or interfered with, or was indifferent to the Plaintiff's medical needs.

Finally, with respect to Powers, Powers has stated by Affidavit that "I generally defer to the medical staff for the particular type of treatment afforded to the inmates."  (Powers Aff. [22-3] at ¶ 7).  Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment.  *Id*.  Under these principles, the Plaintiff has not alleged facts stating any claim actionable under Section 1983 regarding his course of medical treatment against Cpl. Atkins, Sgt. Church, or Powers.  In summary, the facts in this case do not at all suggest that Cpl. Atkins, Sgt. Church, or Powers showed deliberate indifference to a known, serious medical need.  The Plaintiff has not alleged or demonstrated either *Estelle* element essential to his claim–he has not shown deliberate indifference **or** a serious medical need.  Therefore, it is recommended that Cpl. Atkins, Sgt. Church, and Powers be granted summary judgment.

### *Respondeat superior*

Furthermore, to the extent that the Plaintiff seeks to impose liability on Powers (as the Director of the SCDF) under a theory of *respondeat superior*, the Plaintiff's claim fails.  In *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985), the Court held that "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.  The doctrine of *respondeat superior* has no application under this section."  *Id.* (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (*quoting Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D.Md. 1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971)); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978); *Lopez v. Robinson,* 914 F.2d. 486, 494 (4th Cir. 1990); *Shelton v. Angelone,* 183 F. Supp. 2d 830, 836 (W.D. Va. 2002); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied,* 513 U.S. 813

(1994) (holding a plaintiff must show deliberate indifference of supervisor).  Powers cannot be held liable under a theory of *respondeat superior*.

### Supervisory Liability

Next, to the extent the Plaintiff may rely on the doctrine of supervisory liability with respect to Powers, the Plaintiff has failed to make any showing of supervisory liability. "Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier*, 896 F.2d at 854 (citation omitted).  The plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices.  *Id.*, *see also Moore v. Winebrenner*, 927 F.2d 1312 (4th Cir.), *cert. denied*, 502 U.S. 828 (1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984), *cert. denied*, 470 U.S. 1035 (1985).  The Plaintiff has made no such demonstration here.

### To the Extent the Plaintiff has Alleged Claims Against the Defendants in their Official Capacities, the Defendants are not amenable to suit under Section 1983

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court stated that a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent.  *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Additionally, states and state agencies are not "persons" as defined by 42 U.S.C. § 1983 and therefore are not subject to suit under Section 1983. Will, at 58.

The Plaintiff's Complaint identifies the Defendants by their rank (Corporal; Sergeant) or job title (Warden; Nurse, Doctor) at the SCDF.  The events occurred while the Defendants were

acting in their capacities as employees of the SCDF.[7]  Thus, to the extent Plaintiff lodges claims against the Defendants in their official capacities, these are actually claims against the SCDF and should be dismissed.

### To the Extent the Plaintiff has Alleged Claims Against the Defendants in their Personal Capacities, the Defendants are Entitled to the Defense of Qualified Immunity

The doctrine of qualified immunity protects government officials who are carrying out discretionary functions from personal monetary liability in cases where their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the United States Supreme Court upheld the extension of qualified immunity to prison officials.  In discussing the issue of qualified immunity, the Court of Appeals for the Fourth Circuit stated that:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  In determining whether the specific right allegedly violated was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.  Moreover, the manner in which this clearly established right applies to the actions of the official must also be apparent.  As such, if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal quotations, citations, and modification omitted), *cert. denied*, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995).

In addressing the defense of qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Wilson v. Lane*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).  The plaintiff's rights must be established so clearly that a

---

[7]      Dr. Bianco performs medical services pursuant to a contract with the SCDF.  (Dr. Bianco Aff. [25-3] at ¶ 2).

"reasonable official would understand that what he is doing violates that right."  *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).  If the court initially determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist."  *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).  Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right."  *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

It is well settled that the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration."  *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable as constituting cruel and unusual punishment contravening the Eighth Amendment.  *Estelle*, 429 U.S. 97 at 104-105.  To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).  "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it."  *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

First, in analyzing whether the Defendants are entitled to qualified immunity, the undersigned must determine whether the plaintiff has properly pled a violation of his Eighth Amendment right.  The general Eighth Amendment right at issue was clearly established at the time of the events alleged in the Complaint–in the longstanding principle that a prisoner may not be subjected to deliberate indifference of a serious medical need.  *See Estelle*, 429 U.S. at 104. The Plaintiff contends in his Complaint that he was denied adequate pain medication and

adequate medical care after he fell down the stairs at SCDF.  Assuming this allegation to be true, as the court must do in the present procedural posture, this action cannot be said to be a violation of the Plaintiff's constitutional rights.  The Plaintiff does not allege that any of the Defendants deliberately withheld medication or treatment, nor does he allege that any of the Defendants engaged in any conduct which could be deemed to "shock the conscience."  As stated above, the Plaintiff, at most, disagreed with the treatment he received.

The court does not find that the Plaintiff has alleged deliberate indifference sufficient to survive the Defendants' motions for summary judgment.  Consequently, the Defendants are entitled to qualified immunity.

## State Law Claims

To the extent that Plaintiff's complaint can be read to assert additional claims under state law (*i.e.*, medical malpractice or negligence), it is recommended that the court decline to exercise supplemental jurisdiction of those claims, as it is recommended that summary judgment be granted to the Defendants on the Plaintiff's federal claims as set forth above.  *See* 28 U.S.C. 1367(c).

## CONCLUSION

As the evidence of record shows that there is no genuine issue as to any material fact, it is recommended that summary judgment be entered for the Defendants.  *See* Fed. R. Civ. P. 56(c).

## **<u>RECOMMENDATION</u>**

Based upon the foregoing, it is recommended that the SCDF Defendants' motion for summary judgment **[22] should be granted**. It further is recommended that Dr. Bianco's motion for summary judgment **[25] should be granted**.

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

August 31, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).